

# SERVE

| | |
|---|---|
| **Kathleen Moller** | **22nd Judicial District Court** |
| **VS  2024-10576 Division I** | **Parish of St. Tammany** |
| **Martian Sales Inc et al** | **State of Louisiana** |

**TO THE DEFENDANT:  JOPEN LLC, Through Its Registered Agent: Registered Agents Inc 5900 Balcones Dr Ste 100 Austin,  TX  78731**

### VIA LOUISIANA LONG ARM STATUTE

**You are hereby summoned to comply with** the demand contained in the petition, of which a true and correct copy (exclusive of exhibits), accompanies this citation, or make an appearance, either by filing an answer or other pleading, before the 22nd Judicial District Court, at the Justice Center, 701 N. Columbia Street, Covington, LA, in and for the Parish of St. Tammany, State of Louisiana, within **THIRTY (30)** days after the filing in the record of the affidavit of the individual who either mailed, utilized the services of a commercial carrier or actually delivered the process to the defendant hereof, under penalty default judgment against you.

By order of the Honorable Judges of said Court this   1st day of February, 2024.

*Melissa R. Henry*, Clerk of Court

BY: _____
Katie Gilly, Deputy Clerk

A TRUE COPY
DY. CLERK 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA
Katie Gilly, Deputy Clerk

Issued: 02/02/24

**Counsel or Pro Se:**
Nelson W. Wagar III
Attorney at Law
1401 West Causeway Approach
Mandeville, La 70471

Received on _____, 2024, and on _____, 2024 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff
Parish of _____

101-30 day Long Arm Service Citation
Rev 7/16

# 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

## STATE OF LOUISIANA

NO. _____                                      DIV._____

|  |  |
|---|---|
| **KATHLEEN MOLLER** | St. Tammany<br>Melissa R. Henry - Clerk of Court<br>Jeff White - Deputy Clerk<br>Suit 2024-10576 I |
| **VERSUS** | E-Filed on: 2/01/24 11:25 AM<br>Filed on: 2/01/24 02:05 PM |

**MARTIAN SALES, INC; JOPEN, LLC, a Texas limited liability company; JOHNSON FOODS, LLC, a Wyoming limited liability company; LP IND., LLC, a Wyoming limited liability company; CAG HOLDINGS, LLC, a Wyoming limited liability company; RMH HOLDINGS, INC., a Wyoming corporation; ABC INSURANCE COMPANY and John Does 1-4.**

FILED: _____    _____
                                              **DEPUTY CLERK**

## PETITION FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Kathleen Moller, a person of the full age of majority, residing in the Parish of St. Tammany, Louisiana, individually and on behalf of her late daughter, Harmony Moller (D), who respectfully avers as follows:

1.

Made Defendants herein are:

a. Martian Sales, Inc. d/b/a O.P.M.S. ("Martian Sales"), a foreign corporation which, is incorporated in the State of Wyoming with its principal place of business in Cheyenne, Wyoming.

b. JOPEN, LLC (doing business as A1 Wholesale; Party Nuts; Party Nuts Distributions; Uziel; Innovo Activas; and Evolutionary Organics) ("JOPEN") was and is a Texas-based limited liability company. The only known member of JOPEN, LLC is CSA Managing, LLC. CSA Managing, LLC is a citizen of Texas, domiciled at 3616 Maple Ave. Dallas, Texas 75219.

c. JOHNSON FOODS, LLC (doing business as Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; Cannopy Corp.; and Canopy Corp.) ("Johnson Foods"), was and is a Wyoming limited liability company with citizenship in Wyoming and Georgia. The State of Wyoming does not require limited liability companies incorporated within Wyoming to identify its members.[1] Upon information

---

[1] *See generally,* the Wyoming Limited Liability Act, Wyo. Stat. §§ 17–29–101 et seq. Wyoming's unique business registration procedures allow LLC's to conceal the identities and residency of LLC members. As a result, Plaintiff is not presently able to allege the citizenship of each member with complete accuracy and confidence. This is due to no failure of diligence on the part of Plaintiff but is instead the result of well-known limitations of the Wyoming Limited Liability Act. *See e.g. B.V. Reomie Automateriaal v. IDE Invest & Real Estate, LLC*, 22-CV-00091-SWS, 2022 WL 16901968, at *2 (D. Wyo. Nov. 11, 2022). Committee Notes regarding FRCP 7.1 (a)(2) state that, as Plaintiff as done here, "pleading on information and belief is acceptable at the pleading stage." To the extent this Court remains unsatisfied by Plaintiff's amended complaint and the allegations of LLC citizenship herein, Plaintiff requests that pursuant to this Court's discretionary powers, the matter remain pending, and Defendants meet their burden under FRCP 7.1 to identify LLC members and the citizenship attributed to those parties. *See Vidstone, LLC v. Carnival Corp.*, 115CV02666DMECBS, 2016 WL 943783, at *2 (D. Colo. Mar. 14, 2016), as

or belief, Peyton Shea Palaio is the only known member of JOHNSON FOODS, LLC. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040.

d. LP IND., LLC (doing business as Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; Cannopy Corp.; and Canopy Corp.) ("LP"), was and is a Wyoming limited liability company with citizenship in Wyoming. and Georgia. The State of Wyoming does not require limited liability companies incorporated within Wyoming to identify its members. Upon information and belief, Peyton Shea Palaio is the only known member of LP IND., LLC. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040.

e. CAG Holdings, LLC (doing business as CAG Holdings CO, LLC; Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; and Canopy Corp.) ("CAG"), was and is a Wyoming limited liability company with citizenship in Wyoming and Georgia. The State of Wyoming does not require limited liability companies incorporated within Wyoming to identify its members. Upon information and belief, Peyton Shea Palaio is the only known member of CAG HOLDINGS, LLC. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040.

f. RMH Holdings, LLC (doing business as Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; and Canopy Corp.) ("RMH"), was and is a Wyoming limited liability company with citizenship in Wyoming and Georgia. The State of Wyoming does not require limited liability companies incorporated within Wyoming to identify its members. Upon information and belief, Peyton Shea Palaio is the only known member of RMH HOLDINGS, LLC. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040.

2.

All Defendants named herein are alter egos of one another and operate as a single business enterprise through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names, including, but not limited to: Aether, LLC; Aghosh Corp.; Axis Holdings, LLC; Johnson Foods, LLC; LP IND., LLC; CAG Holdings, LLC; RMH Holdings, LLC; Lunar Labs, LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Highway 160 Way, LLC; PFI, LLC; Nuza LLC; Nuza; Nuza Logistics; Calibre Manufacturing, LLC; Advanced Nutrition; Uziel, LLC; 1099 Industrial, LLC; 1100 Alpha, LLC; Engaged Investments, LLC; Olistic Life Sciences Group; Olistica; Olistica Group; Interactive Earth Sciences Corp.; Liv Group, Inc.; Cascade Naturals; Della Terra Pharmaceuticals; NP Pharma Holdings, LLC; OPMS; Choice Organics; Jordan Process; Precision Biologics; Eyal Gabbey; Petyon Shea Palaio; Mark Jennings; Mark Reilly; and Jacob Fletcher.

3.

All Defendants named herein make up and are hereinafter referred to as the "OPMS

---

an example of a matter in which the court fashioned relief to address a similar circumstance.

defendants," or simply "defendants."

4.

The OPMS defendants are liable to Plaintiff for the wrongful death of Harmony Moller on February 6, 2023.

5.

Venue is proper in this Court inasmuch as the tortious acts and damages were sustained in St. Tammany Parish, Louisiana, which is within this district.

6.

On February 6, 2023, Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand Kratom which she purchased in Mandeville, Louisiana.

7.

Harmony Moller was not married at the time of her death, nor did she have any children. As such, pursuant to Louisiana law, her parents, Kathleen and Ivan Moller, had the exclusive right to bring this survival and wrongful death action pursuant to La. C.C. art. 2315.2 (2).

8.

Since the death of Harmony Moller, her father, Ivan Moller, died on March 24, 2023, and thus his right of action passed to his wife, Katherine Moller as a matter of law.

9.

A postmortem examination of Harmony Moller determined that the cause of death was "Abnormally high left coronary ostia takeoff exacerbated by Mitragynine use" secondary to the ingestion of Kratom.

10.

Kratom is the name given to botanical products derived from the leaves of the *Mitragyna Speciosa* tree, which grows in Southeast Asia.

11.

While the nature and extent of Kratom's impact upon human physiology remains a subject of ongoing study, medical and scientific research confirms that the powdered Kratom sold in the United States is far more dangerous than other natural products that are sold over the counter.

12.

Kratom contains dozens of psychoactive compounds or alkaloids, many of which are not understood. The two most-studied alkaloids are mitragynine and 7-hydroxymitragynine. These

two alkaloids bind to the same opioid brain receptors as morphine. Like opiates, these compounds can lead to analgesia (release of pain), euphoria, and sedation. Both of these alkaloids were found in the whole blood extracted from the decedent on February 7, 2023, and reported in the decedent's autopsy report.

13.

Kratom was not marketed as a dietary ingredient in the United States before October 15, 1994, and is therefore a "new dietary ingredient" under industry standards.

14.

As a new dietary ingredient, Kratom must not be marketed or sold for human consumption without premarket verification that it is safe for that purpose.

15.

None of the Defendants have ever satisfied the basic industry standard for establishing that Kratom is safe for human consumption before marketing it.

16.

The most recent attempt by the kratom industry to legitimize its illegal kratom products occurred on October 21, 2022. On that date, JOHNSON FOODS, LLC, submitted its "New Dietary Ingredient Notification for NPI-001, a Dried Leaf Powder."

17.

When this Notification was submitted, JOHNSON FOODS, LLC and the OPMS defendants knew that no such Notification had ever satisfied the premarket safety standards required to lawfully distribute and sell kratom under federal law.

18.

Like premarket notifications before it, the JOHNSON FOODS, LLC New Dietary Ingredient Notification for the kratom powder was inadequate, incomplete, and incompetent to satisfy the important standards of premarket safety necessary for the safe marketing, distribution and sale of over-the-counter kratom.

19.

The JOHNSON FOODS, LLC New Dietary Ingredient Notification was insufficient under the industry standards for the safe marketing, distribution or sale of botanical ingredients and supplements.

-4-

20.

A growing body of independent scientific and medical research and literature confirms that no form of psychoactive kratom will ever satisfy the basic standard of premarket safety when it comes to over-the-counter sale of kratom for human consumption.

21.

Rather than safe, Kratom is known to cause a wide range of adverse events, including nervousness, agitation, aggression, sleeplessness, hallucinations, delusions, tremors, loss of libido, constipation, skin hyperpigmentation, nausea, vomiting, addiction, severe withdrawal, heart arrhythmias, respiratory depression, seizures, drug-drug interactions, overdose, and death.[2]

22.

According to recent research, Kratom is 63 times more deadly than other natural products that are sold to American consumers.[3]

23.

Thus, it is not scientifically possible for Kratom sellers to verify that their products are safe for human consumption when sold over the counter like coffee, tea, or other natural products.

24.

Unable to verify kratom's safety, the Kratom industry has instead been built upon clandestine and fraudulent business activities, including the unlawful importation of Kratom as "plant food," "incense," "cosmetic" powders, and other legal items.[4]

25.

For years, Federal agencies (and courts) have attempted to protect the public by seizing Kratom and taking other civil and criminal actions against Kratom importers, distributors, and those who illegally sell Kratom as an unapproved treatment for significant medical conditions such as chronic pain, anxiety, addiction, or withdrawal.[5]

---

[2] *See, e.g.,* Xiaotong Li, et al., *An evaluation of adverse drug reactions and outcomes attributed to kratom in the US Food and Drug Administration Adverse Event Reporting System from January 2004 through September 2021* (Clinical and Translational Science, 00:1-10; 2023); Mori J. Krantz, et al, *Ventricular Arrhythmias Associated With Over-the-Counter and Recreational Opioids* (Journal of American College of Cardiology, Vol. 81, No. 23, 2023); Donna Papsun, *Forensic Implications of Kratom: Kratom Toxicity, Correlation with Mitragynine Concentrations, and Polypharmacy* (Current Addiction Reports; published online May 19, 2023).

[3] Xiaotong Li, et al., *An evaluation of adverse drug reactions and outcomes attributed to kratom in the US Food and Drug Administration Adverse Event Reporting System from January 2004 through September 2021* (Clinical and Translational Science, 00:1-10; 2023).

[4] *See* FDA Import Alert # 54-15 (https://www.accessdata.fda.gov/cms_ia/importalert_1137.html) (last accessed October 23, 2023).

[5] *See* Seizures and Injunctions – Health Fraud ( https://www.fda.gov/consumers/health-fraud-scams/seizures-and-injunctions-health-fraud ) (last accessed October 23, 2023); FDA Statement, Advisory about deadly risks associated with kratom (https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fda-advisory-about-deadly-risks-associated-kratom ) (last accessed October 23, 2023).

26.

In addition to enforcement actions at the national level, an increasing number of states and cities have passed laws making Kratom illegal at the local level.

27.

Despite these efforts, the industry is successfully smuggling billions of dollars' worth of Kratom across the border. Once it gets past customs and border officials, the Kratom is quickly channeled into chains of distribution managed by individuals and entities generating huge profits from millions of consumers. Despite the serious risks of kratom use, profit-seeking companies continue to market kratom products with unproven and deceptive claims about its safety and ability to cure, treat or prevent medical conditions and diseases. The FDA's examples of illegal claims include statements such as: "many people use kratom to overcome opiate addiction," and kratom is frequently used "as a natural alternative" to treat various health conditions, replacing opiate prescriptions.[6]

28.

Because kratom is adulterated, many of the leading kratom businesses conceal their identities and activities behind mysterious and evolving shell companies, and misleading labels.

29.

The OPMS defendants have profited from unfair and deceptive business practices by promoting, distributing and/or selling dangerous Kratom products to Louisiana residents, including Harmony Moller.

30.

OPMS kratom is imported, packaged, distributed, and sold through a complex web of companies that includes Defendants. This web is referred to herein as the OPMS enterprise.

31.

The OPMS enterprise is one of the largest kratom distributors in the United States, including Louisiana.

---

[6] *See* FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://www.fda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproved-kratom-drug-products-marketed-opioid) (last accessed October 23, 2023).

32.

Despite its prominence in the kratom industry, the OPMS enterprises' evasive tactics and abuse of corporate forms has been highlighted by recent investigative reports, as well as public filings in multiple lawsuits and claims brought by those harmed by its misconduct.[7]

33.

Through its various alter egos and agents, the OPMS enterprise has supported the import, distribution, and sale of three of the most popular kratom brand names on the market: Whole Herbs, Remarkable Herbs, and the OPMS product at issue in this case.

34.

OPMS Kratom is manufactured, packaged, distributed, and sold by the OPMS defendants via the stream of commerce throughout the United States to herbal stores, gas stations, corner stores, and smoke shops where it is primarily marketed as an herbal medicine or supplement to treat a variety of ailments such as pain, mental health, opioid withdrawal and constitutes as "product" as defined by La. R.S. 9:2800.53 (3).

35.

The OPMS defendants are a "manufacturer(s)" as defined by La. R.S. 9:2800.53 (1).

36.

At the time of her death, the ingestion of Kratom by Harmony Moller was a reasonably anticipated use of the product manufactured by Defendants as defined by La. R.S. 9:2800.53 (7) and an intended use of the product by Defendants.

37.

Kratom is unreasonably dangerous as a matter of law, as defined by Louisiana's Products Liability Act, La. R.S. 9:2800.51 *et seq.*, due to its failure to adequately warn users of the risk of sudden death by heart failure and/or great vessel failure, congenital heart or blood vessel conditions, its failure to warn of the opioid like effects of kratom and the pathological consequences of use of an atypical opiate like kratom, the failure to specify a maximum single dose warning, the failure to warn that any undefined overdose could cause injury or sudden death, what the symptoms of overdose would be to alert the victim or nearby persons, family or

---

[7] *See, e.g.,* Hannah Critchfield, *A major US kratom brand relies on a maze of companies. Here's the list*, TAMPA BAY TIMES (Dec. 19, 2023) (https://www.tampabay.com/investigations/2023/12/19/major-us-kratom-brand-relies-maze-companies-heres-list/ ); Hannah Critchfield, Helen Freund and Langston Taylor, *DEADLY DOSE PART 3: Kratom's path across the US is marked by deception and secrets,* TAMPA BAY TIMES (December 17, 2023 (https://project.tampabay.com/investigations/deadly-dose/kratom-industry-opms-supply-chain-indonesia-florida/ ).

responders, nor any instructions regarding first aid or medical intervention at any stage of a user's symptoms as defined and required by La. R.S. 9:2800.53 (9).

38.

As a direct and proximate result of the manufacture and distribution of its unreasonably dangerous and defective product to Harmony Moller, as aforesaid, Defendants are strictly liable to Plaintiff in damages for Harmony Moller's conscious pain, suffering, fear, and grief in anticipation of death.

39.

The kratom product consumed by the decedent was also unreasonably dangerous and defective in design as defined by and in violation of La. R.S. 2800.56 in that there existed alternative products with the same or similar alleged benefits capable of preventing injury and death to users and the likelihood of injury or death with the use of kratom outweighed the burden of adopting such alternative design or use of different products.

40.

As a direct and proximate result of the manufacture and distribution of its unreasonably dangerous and defective product to Harmony Moller, as aforesaid, Defendants are strictly liable to Plaintiff in damages for her parents' grief, loss of companionship and consortium, love, affection, and support due to her wrongful death pursuant to La. C.C. art. 2315.2

Respectfully submitted,

WAGAR HICKMAN, LLC

_____
NELSON W. WAGAR, III (#13136)
SARAH WAGAR HICKMAN (#35823)
1401 West Causeway Approach
Mandeville, Louisiana 70471
Telephone (985) 888-8740
Facsimile (985) 888-8792
cwagar@wagarhickman.com
shickman@wagarhickman.com
*Attorneys for Plaintiff, Kathleen Moller*

A TRUE COPY

_____
DY. CLERK 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA
Katie Gilly, Deputy Clerk

***PLEASE SERVE VIA LONG ARM STATUTE:***

Martian Sales, Inc.
through its registered agent:
Registered Agents Inc.
30 N Gould St., Ste. R
Sheridan, WY 82801

JOPEN, LLC
through its registered agent:
Registered Agents Inc.
5900 Balcones Dr., Ste. 100
Austin, TX 78731

Johnson Foods, LLC
through its registered agent:
Registered Agents Inc.
30 N Gould St., Ste. R
Sheridan, WY 82801

LP Ind., LLC
through its registered agent:
Registered Agents Inc.
30 N Gould St., Ste. R
Sheridan, WY 82801

CAG Holdings, LLC
through its registered agent:
Registered Agents Inc.
30 N Gould St., Ste. R
Sheridan, WY 82801

RMH Holdings, LLC
through its registered agent:
Wyoming Registered Agent
1621 Central Ave.
Cheyenne, WY 82001